UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


JAMES BRASSELL                                          PLAINTIFF


VS.                                 CIVIL ACTION NO. 3:05CV476LS


ROBERT TURNER, JR.                                      DEFENDANT


MEMORANDUM OPINION AND ORDER

On September 24, 2004, plaintiff James Brassell was arrested
by Hinds County Deputy Sheriff Robert Turner, Jr. on a misdemeanor
charge of willfully evading service of process.  Brassell was
tried in Justice Court on October 5, 2005, and found not guilty
based on the judge's determination that the document which Turner
had sought to serve on Brassell was not "process."  Brassell
subsequently filed the present § 1983 action for false arrest and
detention against Deputy Turner, both in his individual and
official capacities.  This cause is now before the court on
Turner's motion, in his individual capacity, for summary judgment
on the ground of qualified immunity.  Brassell has responded in
opposition to the motion and the court, having considered the
memoranda of authorities, together with attachments, submitted by
the parties, concludes that the motion is well taken and should be
granted.

The basic facts giving rise to the claims in this cause, as
drawn from the complaint and evidentiary materials submitted by

the parties, are these.  On September 13, 2004, after having discovered that Brassell was mining 25 acres without a proper surface mining permit, the Mississippi Department of Environment Quality prepared a letter, a formal "Notice of Violation," to Brassell directing that he cease his mining operations until such time as he obtained the necessary permits.  This letter was sent to the Hinds County Sheriff's Department, Civil Process Division, along with a letter requesting that the letter be served on Brassell.

According to an affidavit submitted by Turner, on September 22, 2004, he unsuccessfully attempted to serve Brassell "with process sent to" him by the DEQ.  This, he says, was after failed attempts by the DEQ and another deputy, Jeff Hammond, to serve Brassell.  Therefore, he filed a criminal affidavit seeking an arrest warrant for Brassell "based on the history of unsuccessful attempts to serve Brassell because he was evading service of process."  A warrant was issued on September 23, and on September 29, around 7:00 a.m., Turner, accompanied by Deputy Sheriff John Williams, arrested Brassell as he was leaving his home and heading to work.

Brassell was handcuffed and placed in the rear seat of Turner's vehicle.  After waiting about 40 minutes for a wrecker to arrive to pick up Brassell's vehicle, he was transported by Turner to the Jackson office of the Hinds County Sheriff's Department.

2

There, he was detained briefly before being taken for an initial appearance before the justice court.  Brassell was released on his own recognizance, following which he was again handcuffed, and transported by van to the Raymond Office of the Sheriff's Department for processing.  Records reflect that Brassell was booked at 12:07 p.m. and released at 12:24 p.m.

Under Mississippi law, it is a misdemeanor offense to resist or evade service of process by one authorized to serve process. See Miss. Code Ann. § 97-9-75 ("Any person who knowingly or wilfully opposes any officer or other authorized person in serving or attempting to serve or execute any legal writ or process, shall be guilty of a misdemeanor").  Here, Brassell does not deny that Turner was authorized to serve process, nor does he deny that Turner reasonably perceived him as having resisted service of the letter from DEQ.  Rather, the basis for his claim is that the document which Turner attempted to serve on him and which he allegedly evaded was not lawful "process" at all, but merely a letter.  He contends that since it is not a crime to evade service of a letter, Turner lacked probable cause to believe an offense had been committed.

In support of his assertion of qualified immunity in connection with Brassell's charge of false arrest, Turner argues that he is insulated from liability by virtue of the fact that he acted pursuant to a valid arrest warrant, and that in any event,

3

he reasonably and genuinely believed the DEQ letter qualified as "process" within the meaning of § 97-9-75.

A two-step approach is used to evaluate qualified immunity claims.  The first step is to "consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right."  Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001) (citing Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)).  To make out a constitutional violation based on false arrest, Brassell must show that Turner acted without probable cause.  Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001).

If the plaintiff's allegations could make out a constitutional violation, the court then asks "whether the right was clearly established–that is, whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Price, 256 F.3d at 369 (quoting Saucier, 121 S. Ct. at 2156).  "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity."  Southard v. Tex. Bd. of Criminal Justice, 114 F.3d 539, 550 (5th Cir. 1997).  "This inquiry is an objective one, not dependant on the particular officer's subjective beliefs."  Haggerty v. Texas Southern Univ.,

4

391 F.3d 653, 655 (5th Cir. 2004) (citing <u>Anderson v. Creighton</u>,
483 U.S. 635, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987)).

In the case at bar, Turner's motion relies, in part, on what
the Fifth Circuit has termed the "break in the causal chain"
doctrine, which holds that once "facts supporting an arrest are
placed before an independent intermediary such as a magistrate or
grand jury, the intermediary's decision breaks the chain of
causation for false arrest, insulating the initiating party."
<u>Taylor v. Gregg</u>, 36 F.3d 453, 456 (5th Cir. 1996) (internal
citations omitted).  <u>See also</u> <u>Vance v. Nunnery</u>, 137 F.3d 270, 276
n.3 (5th Cir. 1998) (stating that "a police officer who makes an
arrest on the basis of a facially valid arrest warrant will in
most cases be entitled to qualified immunity").  However, "the
chain of causation is broken only where all the facts are
presented to the grand jury, or other independent intermediary
where the malicious motive of the law enforcement officials does
not lead them to withhold any relevant information from the
independent intermediary."  <u>Hand v. Gary</u>, 838 F.2d 1420, 1428 (5th
Cir. 1988).  <u>See also</u> <u>Shields v. Twiss</u>, 389 F.3d 142, 150 (5th
Cir. 2004) (stating that the causal chain is not broken "if the
plaintiff affirmatively shows that 'the deliberations of that
intermediary were in some way tainted by the actions of the
defendants.'" (citing <u>Taylor</u>, 36 F.3d at 456); <u>Spivey v.</u>
<u>Robertson</u>, 2002 WL 334710, at 1 (5th Cir. 2002) (finding that

5

officer was insulated from liability where the  plaintiffs "did
not present evidence to establish that the officers acted
intentionally or with reckless disregard to the truth, or that
they failed to provide the judge with information that was
critical to a finding of probable cause"); Velardi v. Walsh, 40
F.3d 569, 573 (2d Cir. 1994) (stating that when an arresting
"officer knows, or has reason to know, that he has materially
misled a magistrate on the basis for a finding of probable cause,
. . . the shield of immunity [afforded by a warrant] is lost")
(cited in Vance).

     In response to Turner's motion, Brassell argues that Turner
may not properly rely on the arrest warrant as a basis for
claiming qualified immunity because he failed to disclose all the
pertinent factual information in his affidavit requesting the
warrant, and in particular, he failed to disclose that what he had
attempted to serve on Brassell was merely a letter, and not
"process."  Brassell submits that as a result of Turner's omission
of this information, the state court judge who issued the warrant
did not have sufficient facts submitted in support of the warrant,
and that there is no "break in the causal chain."

     Turner's affidavit for the arrest warrant recited simply that
Brassell had evaded service of process in violation of the law; it
did not describe the document which Turner had attempted to serve.

6

Even assuming that Turner might be foreclosed from relying on the warrant as establishing probable cause for Brassell's arrest based on an alleged failure to provide all pertinent factual information, Turner would nevertheless be entitled to qualified immunity.[1]

"An officer may arrest a person without a warrant if there is probable cause that the person committed any offense in the officer's presence." <u>Payne v. City of Olive Branch</u>, 130 Fed. Appx. 656, 662, 2005 WL 995950, 5 (5th Cir. 2005) (citing <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 121 S. Ct. 1536, 1557, 149 L. Ed. 2d 549 (2001)); <u>McGaughy v. City of Houston</u>, 77 Fed. Appx.

---

[1]     As addressed in more detail <u>infra</u>, the court is convinced that Turner's conclusion that the document was "process" was not objectively unreasonable, and thus it is clear he did not intentionally or maliciously undertake to mislead the magistrate by failing to provide sufficient information for the magistrate to make an independent determination of probable cause.  Thus, Turner could not be held liable for failing to furnish information that would have been necessary to a finding of probable cause.

In this respect, this case is analogous to <u>Spruill v. Watson</u>, 157 Fed. Appx. 741, 743, 2005 WL 3395382, 1 (5th Cir. 2005). There, the defendant officer, Watson, had filed a federal criminal complaint alleging that Spruill's possession of a handgun while subject to a restraining order constituted a violation of 18 U.S.C. § 922(g)(8).  Spruill pleaded guilty to violating § 922(g)(8) and was convicted, but on appeal, the Fifth Circuit vacated his conviction, finding that the restraining order in question was invalid.  Spruill then sued Watson for false imprisonment.  The court concluded that Watson was entitled to qualified immunity, stating that the only arguably questionable conduct by Watson was his filing of a sworn criminal complaint stating that Spruill was subject to a valid restraining order. The court concluded that while it had ultimately determined that the restraining order was not valid, "such a legal determination would not then have been clear to all reasonable officers in the situation confronting Watson."  <u>Id</u>.

280, 281–282, 2003 WL 22316874, 1 (5th Cir. 2003) ("Although the
Constitution does not require a warrant for misdemeanors not
committed in the presence of the arresting officer, it does
require that such an arrest be supported by probable cause.").
Probable cause exists "when the totality of the facts and
circumstances within a police officer's knowledge at the moment of
arrest are sufficient for a reasonable person to conclude that the
suspect had committed or was committing an offense." <u>Glenn v.
City of Tyler</u>, 242 F.3d 307, 313 (5th Cir. 2001) (internal
quotation marks and citation omitted).  "A police officer is
entitled to qualified immunity for an arrest if a reasonable
person in the officer's position could have believed he had
probable cause to arrest." <u>McGaughy</u>, 77 Fed. Appx. at 282, 2003
WL 22316874, at 1 (5th Cir. 2003).  Thus, if a reasonable officer
could have believed he had probable cause to conclude that
Brassell had evaded service of "process," then Turner is entitled
to qualified immunity.  The question, then, is whether a
reasonable officer in Turner's position could have believed the
DEQ letter was "process."

Although § 97-9-75 does not define "process" and there are no
Mississippi cases interpreting the meaning of the term under the
statute, and while the Sheriff's Department has no written or
verbal policy as to what "process" is, Brassell argues that it
should have been obvious to Turner that "process," as used in the

statute, refers to a legal writ, issued through the process of a court or other quasi-judicial body, and that Turner should have known, therefore, that a letter from the DEQ did not qualify as "process."[2]  While the justice court ultimately agreed that the DEQ letter did not qualify as "process," Brassell has not demonstrated that Turner could not reasonably have thought otherwise.

Again, the statute did not suggest a meaning for the term "process," nor did the Sheriff's Department have any standards in place for determining what was or was not "process."  In fact, according to the affidavit of Deputy Sheriff John Williams, it is the normal procedure for the Sheriff's Department to serve DEQ letters as process according to procedures that are the same as for any other process.  Furthermore, and perhaps most pertinently, it is undisputed that upon receiving the letter from the DEQ and prior to attempting to serve Brassell, Turner consulted with the Sheriff's Department's legal counsel, William Gowan, and was advised by Gowan that the letter was process and should be served as process.  Gowan confirmed having given this advice in his deposition, stating:

--------

[2]    In support of this position, he points to the Black's Law Dictionary definition of "process" as "the writ, summons, mandate, or the process which is used to inform the defendant of the institution of proceedings against him and to compel his appearance, in either civil or criminal cases."

> I told him that I felt that anything coming from a state
> agency that did have subpoena power, had powers of
> enforcement of laws that were quasi-criminal in nature,
> even that it could lead to that or to the imposition of
> fines, etc, that all we were doing was providing notice
> to individuals and it should be treated as process.  In
> my opinion, it was.

Regarding Gowan's testimony, Brassell points out that "[w]hether or not the letter was process to be served does not answer whether or not the letter was process on which an individual could be arrested."  However, Gowan addressed this issue in his testimony as well, stating that while he did not specifically advise Turner as to whether it was appropriate for Brassell to be arrested for allegedly refusing to accept service of process, he believed Deputy Turner would have reasonably considered that "a natural extension of what my original advice was to him when I thought that would be appropriate."  In this vein, Gowan stated, "All I'm saying is that he acted on my advice to the logical conclusion that if it was process and the process was refused, the statute (on misdemeanor evasion of service of process) would apply."  The court concurs in this reasoning; Brassell has not suggested any basis on which Turner might have concluded that "process" was not "process" for all purposes.

Although reliance on advice of counsel does not necessarily insulate an officer from liability, it is a factor the court may consider under the objective "good faith" standard for determining whether qualified immunity exists.  Buford v. Holladay, 133 F.R.D.

487, 496 (S.D. Miss. 1990).  Indeed, most courts recognize that
"where the law is unclear, a police officer is immune if the
officer consulted with and relied upon the advice of a county
attorney."  See England v. Hendricks, 880 F.2d 281, 284 (10th Cir.
1989); see also Texas Faculty Ass'n v. University of Texas at
Dallas, 1990 WL 161244, *5 (N.D. Tex. 1990) (finding that
individual officials' reliance on the advice of counsel,
"especially in light of the fact that the underlying caselaw is
unsettled, entitles the Individuals to qualified immunity"); cf.
Walters v. Grossheim, 990 F.2d 381, 384 (8th Cir. 1983)
(recognizing that "although following the advice of counsel bears
on the reasonableness of defendants' conduct, it does not
automatically cloak them with qualified immunity," and holding
that under facts presented, alleged reliance on counsel's advice
did not immunize defendants, who reasonably should have known the
applicable rules); LeBeau v. Town of Spencer, 167 F. Supp. 2d 449,
455 (D. Mass. 2001) (finding that colorable argument could be made
that even though defendants sought advice of counsel, their
actions were not objectively reasonable because the police
department's regulations "clearly established the procedures to
follow for suspending employees in a way that is consistent with

11

their due process rights" and defendants did not comply with those procedures).[3]

Here, counsel's advice may have been incorrect, and indeed was ultimately found to have been incorrect by the justice court judge. In the court's opinion, however, it was not manifestly without basis, and Turner was warranted in relying on that advice. The court concludes, therefore, that his conclusion that there was probable cause for Brassell's arrest was not objectively unreasonable.

In addition to his claim for false arrest, Brassell complains that he was illegally detained by Turner following his initial appearance. Specifically, Brassell alleges that despite the fact that the judge ordered him released on his own recognizance at the time of his initial appearance, Turner did not release him, and instead, transported him to the Sheriff's Department's Raymond office for processing. However, it is undisputed that this is the Sheriff's Department's standard procedure, and that all arrestees

---

[3] The court in <u>Davis v. Zirkelbach</u>, 149 F.3d 614, 620 (7th Cir. 1998), found that officers were objectively reasonable in relying on advice of the police department's counsel where the law was unclear, and observed:

> A contrary conclusion on these facts would create perverse incentives for police officers faced with an unusual problem: if they sought advice of counsel that turned out to be wrong, they would be liable, but if they maintained a deliberate ignorance, they might be able to get away with arguing that no reasonable officer would have known that the rule applied to their particular situation.

are processed through the Raymond office.  Brassell himself testified in his deposition that during the initial appearance, although the judge did order him released, she explained to him that prior to his actually being released, he would first have to be taken to Raymond for processing.  The brief detention for this purpose did not violate constitutional standards, and certainly, Turner's actions in this regard were objectively reasonable.

Brassell finally charges that Turner used excessive force in the manner of effecting his arrest, alleging, more particularly, that he "suffered pain and disfigurement about the wrists because the hand cuffs were not double locked and therefore tightened down on his wrists each time the plaintiff moved a measure that inflicted unnecessary and wanton pain."  Elaborating on this charge, Brassell testified in his deposition that at the time of his arrest, Turner handcuffed him behind his back and placed him in the vehicle.  He remained there for approximately 45 minutes to an hour while waiting on a wrecker and while being transported to the Sheriff's Department office.  During all that time, because the seat was low and his knees were high, the entire weight of his body was pressing against the metal, so that by the time he got to the Sheriff's Department, both of his hands were "completely bluish purple."  Brassell stated that he was "extremely uncomfortable," and every time he moved "it seemed like they would get tighter or hurt worse."

In his motion, and accompanying affidavit, and in deposition testimony, Turner explains that he handcuffed Brassell behind the back because his vehicle had no cage to separate Brassell from him.  Turner maintains that he double locked the hand cuffs and made sure there was a finger's width between the cuffs and Brassell's wrists before placing him in the car, and contends that he is entitled to qualified immunity as his actions did not violate any constitutional right of Brassell.

While "a particular application of handcuffs, like any other use of force by police officers effectuating a seizure for purposes of the Fourth Amendment, may constitute an excessive use of force in some circumstances," Eason v. Anoka-Hennepin East Metro Narcotics & Violent Crimes Task Force, 2002 WL 1303023, at 5 (D. Minn. 2002) (citing Neague v. Cynkar, 258 F.3d 504, 507 (6th Cir. 2001) (stating that a viable excessive force claim can be premised on handcuffing)), the Fifth Circuit has held that "handcuffing too tightly, without more, does not amount to excessive force," Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2004).  See also Glass v. Philadelphia, City of., 2006 WL 2873992, 50 (E.D. Pa. 2006) (finding that under totality of circumstances, officer's method of handcuffing arrestee, with "single-locked" handcuffs, did not support a finding of excessive force in violation of the Fourth Amendment).

14

Here, the court must assume that Turner, contrary to his assertion, did not double lock the handcuffs when they were placed on Brassell.  However, Brassell has not contended that Turner put the handcuffs on him too tightly initially, but rather only that Turner failed to double lock them, which allowed them to become tighter when Brassell moved.  Moreover, it is undisputed that Brassell never told Turner that the cuffs were too tight or that he was uncomfortable.  The court concludes, therefore, that Turner is entitled to qualified immunity with respect to this claim.[4]

Based on the foregoing, it is ordered that Turner's motion

_____

[4]     The court would note that in any event, Brassell's alleged injury does not satisfy the injury requirement of a § 1983 claim.  The Fifth Circuit has held that while a "significant injury" is not required for excessive force claims, "the injury must be more than de minimis." Tarver v. City of Edna, 410 F.3d 745 (5th Cir. 2005) (citing Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999)).  Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) (reaffirming a prior holding requiring medical records establishing permanent injury before allowing the application of handcuffs to give rise to an excessive force claim) (cited in Tarver).

Brassell has "not allege[d] any degree of physical harm greater than de minimis from the handcuffing," and accordingly has no cognizable claim.  Brassell did allege in his complaint that he suffered "permanent nerve damage" from the handcuffing.  In his deposition, however, he testified only that he had showed his injury to a doctor friend, and that this doctor friend had told him he had a bruised nerve which would simply have to heal with time; there was no medical treatment indicated and Brassell stated that he never sought further medical attention or treatment and does not intend to do so.  As a matter of law, a bruised nerve that will heal with time is not more than de minimis.

for summary judgment on the basis of qualified immunity is granted.

SO ORDERED this 15th day of November, 2006.

    /s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE